UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HOWARD SPIKES,

                                        Petitioner,                    9:07-CV-1129
                                                                        (DNH/GHL)

                    v.

H.D. GRAHAM,

                                        Respondent.

_____

APPEARANCES:                                OF COUNSEL:

HOWARD SPIKES, 05-B-0135
Petitioner *pro se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York


HON. ANDREW M. CUOMO                      JODI A. DANZIG, ESQ.
Office of the Attorney General            Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271


GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION

        This action has been referred to the undersigned by District Court Judge David N. Hurd

for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New

York Local Rule 72.3(c).  For the reasons discussed below, I recommend that the petition be

denied and dismissed.

## I.    THE HABEAS PETITION

On October 24, 2007, Petitioner Howard Spikes, *pro se*, filed a petition under 28 U.S.C. §

2254 for a writ of habeas corpus.  He challenges the judgment entered on January 10, 2005, in

Onondaga County Court convicting him, after a plea of guilty, of robbery in the first degree and

sentencing him to imprisonment for twelve and a half years plus five years of post-release

supervision.  (Dkt. No. 1.)  Petitioner's conviction was affirmed by the Appellate Division,

Fourth Department, and leave to appeal to the Court of Appeals was denied.  *People v. Spikes,*

813 N.Y.S. 2d 602 (N.Y. App. Div. 2006); *leave denied* 7 N.Y.3d 818 (2006).

## II.    THE CLAIMS

Petitioner seeks habeas relief on the following grounds:

1.    His guilty plea was not knowing, voluntary, and intelligently made and the trial

court should have granted his motion to set aside the plea.  (Dkt. No. 1 at 4-5.)

2.    He was denied effective assistance of counsel because his attorney coerced him

into accepting the plea bargain and failed to pursue an intoxication defense.  (Dkt.

No. 1 at 5.)

3.    The sentence he received was harsh and excessive because he is terminally ill.[1]

(Dkt. No. 1 at 5.)

4.    His waiver of appeal was void as against public policy.  (Dkt. No. 1 at 5-6.)

Respondent argues that (1) the Appellate Division reasonably applied clearly established

federal law when it ruled that Petitioner's guilty plea was voluntary and affirmed the trial court's

denial of Petitioner's motion to set aside the plea; (2) Petitioner's ineffective assistance of

---

[1]    Petitioner was diagnosed with HIV in 1997.  (Dkt. No. 1 at 69.)

counsel claim is unexhausted and meritless; (3) Petitioner's excessive sentence claim is

unexhausted and meritless; and (4) Petitioner's claim regarding his waiver of appeal is moot and

meritless.  (Dkt. No. 8.)

## III.   RELEVANT FACTUAL BACKGROUND

On May 25, 2004, the Onondaga County Grand Jury indicted Petitioner on one count of

robbery in the first degree, two counts of burglary in the second degree, and seven counts of

burglary in the third degree.  (Dkt. No. 11-1.)  The indictment charged that Petitioner committed

a series of burglaries between May 23 and May 25, 2004.  The first count charged that Plaintiff

committed first degree robbery when he used a knife to forcibly steal property from one victim.

*Id*.  In addition, there were between fifteen and twenty other burglary charges pending against

Petitioner that had not yet resulted in an indictment.  (Dkt. No. 11-3 at 4:7-14.)

On July 7, 2004, Petitioner appeared in Onondaga County Court with his attorney.  (Dkt.

No. 28-1.)  Plaintiff expressed dissatisfaction with his attorney's performance and the judge

relieved her.  *Id.*  Thereafter, attorney Eric Jeschke was assigned to represent Petitioner.  He

appeared with Petitioner at the arraignment on August 11, 2004.  (Dkt. No. 28-3.)  Petitioner

entered a plea of not guilty.  *Id*. at 3:13-25.

On August 18, 2004, Petitioner appeared in court with Mr. Jeschke.  (Dkt. No. 11-2 at

1:21-24.)  At that time, Petitioner had been incarcerated for two and a half months.  (Dkt. No. 11-

3 at 9:6-10.)  An off-the-record discussion was held in chambers between Mr. Jeschke, the judge,

and Petitioner.  (Dkt. No. 11-2 at 2:13-17.)  Petitioner asserted in his state court collateral

proceedings that, during this conference, the judge informed him that it was a "guaranty" that he

would not win a trial in his courtroom. (Dkt. No. 11-6.)

Back on the record in court, Mr. Jeschke reported that the People had offered a plea bargain of a plea of guilty to the first degree robbery count in exchange for a sentence of twelve and a half years plus five years of post-release supervision. (Dkt. No. 11-2 at 2:20-3:2.) Mr. Jeschke indicated that he had initially pursued a deal under which Petitioner would receive a ten-year sentence. The People's position, however, was that a ten-year term would only satisfy the ten-count indictment. It would not satisfy the fifteen or twenty charges on which Petitioner had not yet been indicted. The People would agree not to pursue the outstanding unindicted charges only if Petitioner received, at minimum, a twelve and a half year prison term. *Id*. at 3:4-13. After this description of the proposed plea bargain, Petitioner was sworn in for the plea colloquy. *Id*. at 4:23.

Under oath, Petitioner confirmed that he could read and write English. *Id*. at 4:24-5:5. He testified that he did not have any physical or mental problems and, as is most relevant here, that he had not consumed any alcohol or drugs that would prevent him from understanding the proceedings. (*Id.* at 5:6-10.) He testified that he was entering the plea freely and voluntarily because he was guilty and that no one had threatened or forced him or made any promises to induce him to enter the plea. *Id*. at 5:11-19. He testified that he understood that he was giving up the right to a trial, the right to confront and cross-examine the witnesses against him, and the right to remain silent. *Id*. at 5:20-6:15. He testified that he understood that he was pleading guilty to a Class B violent felony, punishable by up to twenty-five years in state prison with five years of post-release supervision. *Id*. at 6:16-7:3. He testified that he understood that he was waiving his right to appeal. *Id*. at 7:20-8:8. He agreed to sign a written waiver of the right to appeal on the day of his sentencing. *Id*. at 8:13-17. He testified that he did not have any

4

questions for the judge or Mr. Jeschke. *Id*. at 7:4-7, 8:9-12. He confirmed that he was satisfied

with Mr. Jeschke's services and agreed that Mr. Jeschke had "worked awfully hard" for him. *Id*.

at 7:8-13. He admitted that on or about May 25, 2004, he used a knife to forcibly steal property

from a person and that he was guilty of robbery in the first degree. *Id*. at 9:6-20. The court

accepted his plea and scheduled sentencing for September 7, 2004. *Id*. at 9:21-10:6.

On January 10, 2005, Petitioner appeared with Mr. Jeschke for sentencing. (Dkt. No. 11-

3.) Petitioner informed the court that he wanted to withdraw his plea. *Id*. at 2:20. He stated that

he had never held a knife on anyone. *Id*. at 2:16-3:9. He accused Mr. Jeschke of "not working

on my behalf; he is working with y'all." *Id*. at 2:25-3:2. The judge, noting that Petitioner had

been charged with at least eighteen different burglaries, observed that "Mr. Jeschke worked out a

pretty fair disposition" and informed Petitioner that he could be charged with perjury if he said

that he had lied under oath at his plea hearing. *Id.* at 4:1-21. Petitioner stated that he was "still

under the influence of drugs that I came in." *Id*. at 5:3-5. The judge noted that Petitioner had

testified, under oath, that he was not under the influence of drugs and alcohol at the time of his

plea. *Id*. at 5:8-6:6. Petitioner replied that "I thought you was talking about right then, your

Honor. Right then I was so brainwashed because of the way you all did me in the chambers." *Id*.

at 6:7-10. Petitioner stated that Mr. Jeschke coerced him into accepting the plea:

> He came to me and told me to take this. First listen, you don't need
> this, the Judge this, the Judge that. But then he [is] working with
> y'all. So, you know, it's like - but like I said, I was blind to the fact
> then because of all the drugs, I am still spitting out stuff. He seen me
> in the hospital the other day. I had an operation on my heart. He said
> you can go to the infirmary. I said yeah, okay, that's how you feel
> about me. I don't need no lawyer. He didn't help me.

*Id*. at 8:10-21. The judge asked "If you were brainwashed back then, than you are probably

5

brainwashed today; why should I believe you today?" *Id*. at 8:22-24.  Petitioner stated that he

should be believed because "I am clean and sober today." *Id*. at 9:2.  The judge denied

Petitioner's motion to withdraw his plea and proceeded to sentencing. *Id*. at 9:11-12.

Mr. Jeschke argued that because Petitioner had been leading a law-abiding life for ten

years prior to his relapse into heroin addiction, the court should impose a sentence of only ten

years as recommended in a report from the Center for Community Alternatives. *Id*. at 9:16-

10:20; Dkt. No. 1 at 46.  The judge, noting that only a higher sentence of twelve and a half years

would result in the People agreeing not to pursue any of the outstanding charges against

Petitioner, denied Mr. Jeschke's request and imposed a sentence of twelve and a half years with

five years of post-release supervision.  The judge noted that Mr. Jeschke had "worked extremely

hard on this case" and was "a fine defense lawyer and one heck of an advocate."  (Dkt. No. 11-3

at 10:21-11:25.)

Near the end of the hearing, Petitioner refused to sign the waiver of appeal form. *Id*. at

12:10-15.  The judge reminded Petitioner that he had agreed at the plea colloquy to sign the form

and that he could be sentenced to up to twenty-five years if he did not do so. *Id*. at 12:17-21.

Petitioner stated that "all this stuff that you are telling me right now is new to me." *Id*. at 12:23-

24.  Petitioner stated again that he would not sign the form. *Id*. at 13:13.  The judge chose not to

impose a higher sentence and concluded the hearing. *Id*. at 13:21-22.

Petitioner, represented by counsel, appealed.  (Dkt. No. 11-4.)  He argued that (1) his plea

was not knowing, voluntary, and intelligent; (2) the trial court erred by denying his motion to

withdraw his plea; (3) trial counsel rendered ineffective assistance by coercing Petitioner into

accepting a plea and failing to pursue an intoxication defense; (4) the sentence was harsh and

excessive; and (5) the waiver of appeal was void as against public policy. *Id*.

In response, the People argued that (1) the plea was knowing, voluntary, and intelligent; (2) the trial court properly denied the motion to withdraw the plea; (3) Petitioner received effective assistance of counsel; (4) the sentence was not unduly harsh or severe; and (5) the waiver of appeal should be enforced. (Dkt. No. 11-5.)

Petitioner, acting *pro se*, filed a supplemental brief in which he argued that he was coerced into accepting the plea during an off-the-record meeting in the judge's chambers at which the judge informed him that it was a "guaranty" that he would not win a trial in his courtroom. (Dkt. No. 11-6.) Petitioner also asserted that he was not guilty of first degree robbery because he had been merely sleeping in the building and had never had a knife. *Id*.

On April 28, 2006, the Appellate Division affirmed the judgment of the trial court. (Dkt. No. 11-8.) The Appellate Division found that (1) Petitioner had validly waived his right to appeal and that the waiver encompassed his challenge "to the factual sufficiency of the plea allocution" and his "challenge to the severity of the sentence"; (2) Petitioner's plea was voluntary, knowing, and intelligent because "his responses to the questions of the court during the plea colloquy did not negate any element of the offense or otherwise cast any doubt on [his] guilt" and his assertion that he was under the influence of drugs was "belied by his statements made under oath during the plea colloquy"; and (3) trial counsel was effective. *Id*. at 2-3. The Appellate Division stated that it had "considered the contention of [Petitioner] raised in his *pro se* supplemental brief and conclude that it is without merit." *Id*. at 3.

Petitioner, represented by counsel, sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. (Dkt. No. 11-9.) Petitioner sought review of three

issues: (1) whether his plea was knowing, voluntary, and intelligent; (2) whether the waiver of appeal was void as against public policy; and (3) whether the trial court was biased and impartial. *Id*. at 3.  Petitioner did *not* list ineffective assistance of trial counsel or the length of his sentence as grounds for his application.  *Id*.  Leave to appeal was denied on August 4, 2006.  (Dkt. No. 11-10.)

Petitioner, proceeding *pro se*, filed a motion to vacate the judgment in Onondaga County Court on January 9, 2007.  (Dkt. No. 11-11.)  Petitioner argued that (1) his testimony during the plea colloquy that he had no physical or mental problems and that he was not under the influence of drugs or alcohol was "conclusively refuted" by Social Security documents, the pre-sentence investigation report, and Petitioner's history; (2) he accepted the plea bargain only after the judge threatened him by saying that he would not win at trial and that he would receive a twenty-five year sentence; (3) trial counsel was ineffective; and (4) Mr. Jeschke had informed Petitioner's partner, Darleen Moore Spikes, that Petitioner would receive no more than five years in prison. *Id*.

Petitioner's motion was denied on March 27, 2007.  (Dkt. No. 11-14.)  Plaintiff sought leave to appeal.  (Dkt. No. 11-15.)  His application was denied on June 2, 2007.  (Dkt. No. 11-17.)

IV.   **DISCUSSION**

A.   Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241(c). Relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

*DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).   Under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a

state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the

state court's decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *Carey v.*

*Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380

(W.D.N.Y. 2004).

A decision on the merits is contrary to clearly established federal law when it is either

contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme

Court case with materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406

(2000).  A state court unreasonably applies federal law when the state court correctly identifies

the governing legal rule in a particular case but applies the rule to the facts in an "objectively

unreasonable" manner.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Although "[s]ome

increment of incorrectness beyond error is required" in order to grant a federal habeas

application, that increment "need not be great; otherwise, habeas relief would be limited to state

court decisions so far off the mark as to suggest judicial incompetence."  *Francis S. v. Stone*, 221

F.3d 100, 111 (2d Cir. 2000) (quotation marks and citation omitted); *see also Hawkins v.*

*Costello*, 460 F.3d 238, 243 (2d Cir. 2006), *cert. denied*, 549 U.S. 1215 (2007).  The state court's

determination of a factual issue is presumed to be correct, and the petitioner has the burden of

rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *DeBerry v.*

*Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied*, 546 U.S. 884 (2005); *Boyette v. Lefevre*,

246 F.3d 76, 88 (2d Cir. 2001).

9

B.    Voluntariness of Plea

Petitioner claims that his guilty plea was not knowing, voluntary, and intelligently made because his responses to the questions of the plea colloquy were all "yes," "no," or monosyllabic, he gave no details of the crime or the circumstances underlying its commission, and he was under the influence of drugs.  (Dkt. No. 1 at 4.)  Petitioner further claims that, based on these facts and his assertion that his attorney coerced him into accepting the plea, the trial court should have granted his motion to withdraw the plea.  *Id*. at 5.  Respondent argues that the Appellate Division's decision on the merits rejecting Petitioner's arguments was not contrary to, or based on an unreasonable application of, clearly established federal law.  (Dkt. No. 8 at 16.)  Respondent is correct.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  To establish that a criminal defendant's guilty plea was voluntarily and intelligently entered the court must find, based upon the record of the relevant plea proceedings, that the criminal defendant (1) was competent to proceed; (2) was fully aware of the nature of the charges faced; (3) had a rational and factual understanding of the proceedings; and (4) was cognizant of the constitutional protections relinquished upon entry of the plea.  *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir. 1986), *cert. dismissed* 479 U.S. 805 (1986).  The criminal defendant's testimony during the plea hearing is a particularly important part of this review of the record because "statements at a plea allocution

carry a strong presumption of veracity." *United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). These statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999).

Petitioner argues that he was incompetent to proceed with his guilty plea because he was under the influence of drugs. (Dkt. No. 1 at 4-5.) The federal right to due process is violated when a person who is incompetent is convicted of a crime, whether the conviction follows a trial or a plea of guilty. *See Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996); *Drope v. Missouri,* 420 U.S. 162, 171-73 (1975); *Pate v. Robinson,* 383 U.S. 375, 378 (1966). As the Supreme Court explained in *Cooper,* "[a] defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Cooper*, 517 U.S. at 354 (citations, internal quotation marks and ellipsis omitted). As the Second Circuit explained in *Nicks v. United States,* 955 F.2d 161 (2d Cir. 1992), "a hearing must be held when there is reasonable ground for a [trial] court to conclude that the defendant may not be competent to stand trial." *Id.* at 168; *Harris v. Kuhlmann*, 346 F.3d 330, 349-350 (2d Cir. 2003).

Here, there was no reasonable ground for the trial court to conclude that Petitioner was not competent at the time of the plea hearing. Petitioner testified under oath that he was not under the influence of drugs. (Dkt. No. 11-2 at 5:6-10.) As noted above, "statements at a plea allocution carry a strong presumption of veracity" and "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Torres,* 129 F.3d at 715; *Adames*, 171 F.3d at 732. Nothing in the record rebuts this presumption of veracity. Indeed, Petitioner's own

statements at the time he moved to withdraw his plea indicate that he was not actually under the influence of drugs at the plea hearing.  Specifically, when the trial judge asked him why he had testified at his plea hearing that he was not under the influence of drugs, he replied that "I thought you was talking about right then, your Honor."  (Dkt. No. 11-3 at 6:7-10.)  This indicates that Petitioner does *not* contend that he was under the influence of drugs "right then," *i.e.*, at the time of the plea hearing.  Further, nothing in the transcripts indicates that Petitioner was acting erratically at the time of the plea hearing, such that the trial judge should have inquired further into whether Petitioner was competent to proceed with the plea.  Therefore, I find that the Appellate Division reasonably applied clearly established federal law.

Petitioner claims that his monosyllabic responses and the fact that he did not provide details of the crime indicate that he did not have a rational and factual understanding of the plea proceedings.  (Dkt. No. 1 at 4.)  Petitioner's claim is without merit.  The United States constitution does not mandate a factual basis inquiry by state courts before accepting a guilty plea.  While federal trial courts are required to conduct a factual inquiry, that inquiry is imposed by Federal Rule of Criminal Procedure 11 rather than by the constitution.  *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Torres v. McGrath*, 407 F. Supp. 2d 551, 558-59 (S.D.N.Y. 2006).  Therefore, I find that the Appellate Division reasonably applied clearly established federal law.

Petitioner argues that his plea was not voluntary because the trial judge coerced him by informing him that he would likely be found guilty and receive a twenty-five year sentence if he proceeded to trial.  It is not coercion if a defendant pleads guilty to avoid a harsher sentence.  *Brady v. United States*, 397 U.S. 742, 752-53 (1970).  "While confronting a defendant with the

12

risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (*quoting Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)); *see also Oyague v. Artuz*, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (holding that a guilty plea was not coerced where the petitioner claimed that the trial court told him that if he was convicted after trial "he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence. Assuming the conversation took place, there is no allegation that the trial court did not believe that its statements were accurate or that the court was motivated by anything but a desire to fully inform petitioner of the consequences of going to trial.")  Here, Petitioner had been indicted on ten charges and was faced with multiple potential charges.  On the charge to which he pleaded guilty alone, Petitioner could have been sentenced to twenty-five years in prison.  N.Y. Penal Law § 70.02(3) (McKinney 2004).  The Appellate Division reasonably applied clearly established federal law to reach the conclusion that the trial judge and defense counsel did not coerce Petitioner, but rather properly informed him of the potential consequences of proceeding to trial.  Therefore, I recommend that the Court deny Petitioner's claim that his guilty plea was not knowing, voluntary, and intelligently made.

C.      Ineffective Assistance of Counsel

        Petitioner claims that trial counsel was ineffective because he coerced Petitioner into pleading guilty and failed to pursue an intoxication defense.  (Dkt. No. 1 at 5.)  Respondent argues that Petitioner's claim is unexhausted and meritless.  (Dkt. No. 8 at 11-14, 20-23.) Respondent is correct.

In order to be eligible for habeas relief, a petitioner's federal constitutional claim must have been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Id*. In order to give state courts this opportunity, a

> litigant wishing to raise a federal issue can easily indicate the federal
> law basis for his claims in a state-court petition or brief, for example,
> by citing in conjunction with the claim the federal source of law on
> which he relies, or a case deciding such a claim on federal grounds,
> or by simply labeling the claim 'federal.'

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998).

Here, Petitioner did not exhaust his ineffective assistance of counsel claim. In his application for leave to appeal to the New York Court of Appeals, Petitioner listed only three issues: (1) whether his plea was knowing, voluntary, and intelligent; (2) whether the waiver of appeal was void as against public policy; and (3) whether the trial court was biased and impartial. (Dkt. No. 11-9 at 3.) Petitioner did *not* list ineffective assistance of trial counsel as grounds for his application. *Id*. The fact that he attached a copy of his appellate brief, which did raise the effectiveness of counsel issue, to his leave application does not help Petitioner. A leave application that explicitly requests review of some, but not all, of the issues raised in the lower court constitutes an abandonment of any other issue, even where a brief that raised the issue in a lower court is attached. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).[2]

_____

[2]  Petitioner asserts that *Galdamez v. Keane*, 394 F.3d 68 (2d Cir. 2005) holds to the contrary. In *Galdamez*, the petitioner's leave application did not include an explicit list of issues to be reviewed, but simply asked for leave to appeal the Appellate Division's decision. The Second

When a claim has not been fairly presented to the state courts, a federal court may nonetheless deem it exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 188 F.2d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001). Here, Petitioner's claim is procedurally barred by state law.  He cannot file another application for leave to appeal to the Court of Appeals because he is entitled to only one such application.  *Grey*, 933 F.2d at 120 (citing N.Y. Court Rules § 500.10(a)).  State court collateral review of the claim is barred because the Appellate Division found that trial counsel was effective (Dkt. No. 11-8 at 3) and thus the issue was previously determined on the merits on direct appeal.  *Grey,* 933 F.2d at 120 (citing N.Y. Crim. Proc. Law § 440.10(2)(a)).  Therefore, the claim is "deemed exhausted" for purposes of Petitioner's habeas application. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

"This apparent salve, however, proves to be cold comfort" to Petitioner, as it does to "most petitioners because it has been held that when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted."  *Aparicio*, 269 F.3d at 90 (citing

--------

Circuit held that the petitioner had properly exhausted his state court remedies.  The Second Circuit distinguished the situation from that in *Grey*, where the petitioner's leave application had requested review of only one of the three issues raised in the Appellate Division.  *Grey*, not *Galdamez*, governs here because Petitioner's leave application requested review of only three of the five issues raised in the Appellate Division rather than seeking leave to appeal the Appellate Division's entire decision.

*Coleman v. Thompson*, 501 U.S. 711 at 735 n.1).  Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See St. Helen v. Senkowski*, 374 F.3d 181,184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to fully exhaust his federal claims.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)).  *See also Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993); *Lovacco v. Stinson*, Civ. No. 97-5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*, 477 U.S. at 488).

Here, Petitioner has not even cursorily asserted any cause for his failure to exhaust.  As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal habeas relief is unavailable as to procedurally barred claims unless **both** cause and

16

prejudice are established. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

Further, nothing in the record supports a finding that the denial of Petitioner's procedurally barred claims would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id.* Petitioner has not met this high burden. Therefore, the Court cannot consider the substance of Petitioner's ineffective assistance of counsel claim and find it to have merit.

The Court may, however, consider the substance of the claim and find it meritless because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Here, Petitioner's claim fails on the merits as well as being unexhausted and procedurally barred.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and

17

(2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional

performance, the outcome of the proceeding would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the

legal principles that govern claims of ineffective assistance of counsel" were established in

*Strickland.*).[3]  There is a strong presumption that counsel's conduct fell within the wide range of

reasonable assistance and that counsel's actions constituted sound trial strategy under the

circumstances.  *Cuevas v. Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986).  Here, nothing in the

record rebuts that strong presumption.[4]  Petitioner was charged with multiple felonies and faced

the possibility of being charged with many more.  Counsel negotiated a favorable plea bargain

that resulted in Petitioner being sentenced to only twelve and a half years, far less than he

potentially faced.  As discussed above, any statements that trial counsel made to Petitioner

regarding the potential prison sentence he faced if he proceeded to trial did not constitute

coercion.  Therefore, the Appellate Division reasonably applied clearly established federal law

when it rejected Petitioner's ineffective assistance of counsel claim.

    D.   <u>Length of Sentence</u>

    Petitioner claims that his sentence was an unconstitutionally harsh and excessive life

sentence because, due to his terminal illness, he will die before he serves twelve and a half years

---

[3]    In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in Strickland qualifies as "clearly established Federal law [.]" *Williams*, 529 U.S. 362, 391 (2000).

[4]    Petitioner has provided the Court with newspaper columns describing two other criminal defendants' dissatisfaction with Mr. Jeschke's performance.  (Dkt. Nos. 14, 42.)  One of those defendants alleged that "Jeschke had told him he would be working with the prosecutor to send the defendant to prison."  (Dkt. No. 14 at 2.)  These columns do not show that Mr. Jeschke rendered ineffective assistance in Petitioner's case.

in prison.  (Dkt. No. 1 at 5.)  Respondent argues that this claim is unexhausted and meritless.

(Dkt. No. 8 at 11-14, 23-24.)  Respondent is correct.  In addition, federal review of the claim is

barred because the Appellate Division relied on an independent and adequate state procedural bar

when it rejected Petitioner's excessive sentence claim.

As discussed above regarding Petitioner's ineffective assistance of counsel claim,

Petitioner failed to exhaust his claim regarding the length of his sentence because he did not list it

as one of the issues to be addressed in his application for leave to appeal to the New York Court

of Appeals.  The claim is thus procedurally barred.  As discussed above, Petitioner has not

demonstrated good cause for his failure to exhaust and has not shown that he is actually innocent

of the charges.  Therefore, Petitioner's claim is not subject to review by this Court because it is

unexhausted.

In addition, federal review of Petitioner's excessive sentence claim is barred because the

Appellate Division relied on an independent and adequate state procedural bar when it rejected

Petitioner's claim.  Generally, a federal court may not reach the merits of a petitioner's habeas

claim if the state courts' rejection of the petitioner's claim rested "on a state law ground that is

independent of the federal question and adequate to support the judgment."  *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991).  "In cases where the highest state court that rendered a

judgment in the case 'clearly and expressly states that its judgment rests on a state procedural

bar' it will be presumed that such procedural bar constitutes independent and adequate state

grounds to deny habeas relief."  *Acosta v. Giambruno*, 326 F. Supp. 2d 513, 520 (S.D.N.Y. 2004)

(quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).  Here, the Appellate Division rejected

Petitioner's excessive sentence claim because it found that Petitioner had validly waived his right

19

to appeal and that the waiver encompassed his "challenge to the severity of the sentence." (Dkt. No. 11-8 at 3.)  In doing so, the Appellate Division relied entirely on New York law regarding the validity of waivers of appeal. *Id*. (citing *People v. Marrero*, 242 A.D.2d 800 (3d Dept. 1997) and *People v. Lopez*, 6 N.Y.3d 248 (2006)).  The Appellate Division did not discuss the substantive merits of Petitioner's excessive sentence claim or cite any federal law regarding the claim. Therefore, the Appellate Division's decision was based on a state law ground that is independent of the federal question and adequate to support the judgment.  Petitioner's claim is thus not subject to federal habeas review unless some exception applies.

When the state court bases its decision on an independent and adequate state procedural bar, a petitioner may only seek habeas review if he or she shows "cause for the default and prejudice resulting therefrom." *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  Here, Petitioner has not shown cause or prejudice.  Read broadly, the petition may assert that there is good cause to excuse the procedural bar because Petitioner's waiver of appeal was unconstitutional.  This assertion is without merit.  As discussed further below, although Petitioner argues that his waiver of appeal is void, it was valid under both New York law and the Due Process Clause of the United States Constitution.  Thus, Plaintiff has not demonstrated cause excusing him from the procedural bar.  Moreover, as discussed below, Petitioner's excessive sentence claim would fail even if this Court reached the merits.  Therefore, Petitioner has not demonstrated prejudice.  Accordingly, Petitioner is not entitled to federal review of his excessive sentence claim.

Even if Petitioner had exhausted his excessive sentence claim or the Appellate Division had not relied on an independent and adequate state procedural bar when it rejected the claim, it

20

would be subject to dismissal on its merits.  Because the Appellate Division did not reach the

federal merits of the claim and instead relied on an independent and adequate procedural bar, this

Court would conduct a *de novo* review of the claim rather than applying the deferential AEDPA

standard.  *Acosta*, 326 F. Supp. 2d at 519 (citing *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir.

2003)).  Even under this more liberal standard, Petitioner's excessive sentence claim would fail

on the merits.  Under the Eighth Amendment, a sentence is unconstitutional if it is "grossly

disproportionate to the severity of the crime."  *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). The

United States Supreme Court has noted that "[o]utside the context of capital punishment,

successful challenges to the proportionality of particular sentences have been exceedingly rare ...

[O]ne could argue without fear of contradiction by any decision of this Court that for crimes

concededly classified and classifiable as felonies ... the length of the sentence actually imposed is

purely a matter of legislative prerogative."  *Rummel*, 445 U.S. at 272-274 (1989) (denying habeas

relief to petitioner sentenced to life with the possibility of parole under Texas recidivist statute

following third felony conviction for obtaining $120.75 by false pretenses).  In the habeas

context, a sentence violates the Eighth Amendment only in "exceedingly rare" and "extreme"

cases, and only then if it is 'grossly disproportionate' to the crime.  *Lockyer v. Andrade*, 538 U.S.

63, 72-73 (2003).  "No federal constitutional issue is presented where ... the sentence is within

the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) (holding

that a state prisoner who was sentenced within the limits of the state law does not present a

federal constitutional issue for habeas purposes) (citing *Underwood v. Kelly*, 692 F. Supp. 146

(E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)); *see also Jackson v. Lacy*, 74 F. Supp.

2d 173, 181 (N.D.N.Y.1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not

challenge the length of a sentence that does not exceed the maximum set by state law").  Here, Petitioner's sentence was well below the maximum sentence of twenty-five years set by New York Law.  N.Y. Penal law § 70.02(3) (McKinney 2004).  Therefore, I recommend that the Court deny Petitioner's excessive sentence claim.

      E.      <u>Waiver of Appeal</u>

Petitioner claims that his waiver of appeal was void as against public policy because he never signed a written waiver.  (Dkt. No. 1 at 5.)  The Appellate Division found that Petitioner's waiver of appeal was valid.  (Dkt. No. 11-8 at 2.)  Respondent argues that Petitioner's claim is moot and without merit.  (Dkt. No. 8 at 25.)

Respondent argues that Petitioner's claim regarding his waiver of appeal is moot.  (Dkt. No. 8 at 25.)  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Respondent asserts that Petitioner's claim is moot because the Appellate Division reached the merits of all of Petitioner's claims despite his waiver of appeal and, therefore, relief is no longer needed.  (Dkt. No. 8 at 25.)  This assertion is not entirely accurate.  As discussed above, the Appellate Division found that Petitioner's excessive sentence claim was barred by the waiver of appeal and, as a result, did not reach the substantive merits of that claim.  (Dkt. No. 11-8 at 2.) Therefore, Petitioner's claim regarding his waiver of appeal is not entirely moot.

Respondent correctly argues, however, that Petitioner's claim is without merit.  The Appellate Division's decision is not contrary to, or an unreasonable application of, clearly established federal law.  As with plea bargains generally, a waiver of appeal is constitutionally valid if it is made knowingly and voluntarily.  *United States v. Monzon*, 359 F.3d 110, 116 (2d

Cir. 2004).  As discussed above, Petitioner's guilty plea was made knowingly and voluntarily.

Petitioner specifically acknowledged during the plea colloquy that he understood that he was

waiving his right to appeal.  (Dkt. No. 11-2 at 7:20-8:8.)  So long as a criminal defendant

knowingly and voluntarily waives his right to appeal, neither New York nor federal law requires

the waiver to be reduced to writing.  *People v. Lopez*, 6 N.Y. 3d 248, 257 (2006).  Therefore, I

recommend that the Court find that the Appellate Division reasonably applied clearly established

federal law when it found that Petitioner's waiver of appeal was valid.

> **WHEREFORE**, based upon the foregoing, it is hereby

> **RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be

**DENIED** and **DISMISSED**.  Furthermore, I find that Petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate

of appealability may issue ... only if the applicant has made a substantial showing of the denial of

a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112

(2d Cir. 2000).  Therefore, I recommend that no certificate of appealability issue with respect to

any of Petitioner's claims.

> Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: July 14, 2010
      Syracuse, New York

George H. Lowe
United States Magistrate Judge